**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JASON CANTRELL,**<br>**individually and on behalf of all others**<br>**similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**YORUZO AUTOMOTIVE TENNESSEE, INC.,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No.: ________** |

## NOTICE OF REMOVAL

Defendant Yorozu Automotive Tennessee, Inc. ("Defendant" or "Yorozu") files this notice of removal of the above-styled case in accordance with 28 U.S.C § 1441, 1446, and 1453 from the Thirty-First Judicial Circuit in the Chancery Court of Warren County, Tennessee (Case No. 17334, to the United States District Court for the Middle District of Tennessee, Nashville Division, and in support of this removal states as follows:

## NATURE OF REMOVED ACTION

1. On July 21, 2026, Plaintiff Jason Cantrell, on behalf of himself and others similarly situated ("Plaintiff"), filed a Class Action Complaint against Defendant. A true and correct copy of the Class Action Complaint ("Complaint") is attached hereto as **Exhibit A**.

2. This Complaint is currently pending in the Thirty-First Judicial District in the Chancery Court of Warren County, Tennessee.

3. Plaintiff purports to bring a class action against Defendant for its alleged failure to properly store and safeguard sensitive personal identifiable information ("PII" or "Private

Information") about its current and former employees that allegedly was compromised in a recent data breach (the "Breach" or "Data Breach").

4. Plaintiff contends that the Data Breach resulted from Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals' Private Information with which it was entrusted during Plaintiff's and Class Members' employment. (Ex. A ¶ 4). More specifically, Plaintiff contends that on or about December 19, 2025, Defendant determined that, during the period from October 9, 2024, through October 13, 2024, threat actor(s) may have accessed Private Information related to Plaintiff and Class Members. (*Id.* ¶¶ 38-39) (internal footnote omitted).

5. Plaintiff alleges that Defendant was "impacted by a ransomware attack." (*Id.* ¶ 38) (internal footnote omitted). Plaintiff was apprised of the Data Breach through a Notice Letter sent by Defendant (the "Breach Notice"). Plaintiff further alleges that the following types of Private Information, at a minimum, was accessed during the Data Breach: names, addresses, dates of birth, Social Security numbers, driver's license numbers, government ID numbers, financial account information, health-insurance information, medical information, and/or biometric information." (*Id.*) (internal footnote omitted). Plaintiff contends that on Defendant "reported to the Indiana Attorney General's office that 20,627 individuals were affected by the Data Breach." (*Id.* ¶ 3) (internal footnote omitted).

6. Plaintiff alleges that based on the nature of the claimed cyberattack, "Plaintiff's and the members of the proposed Class Members' Private Information, unauthorizedly disclosed to third-party cybercriminals in the Data Breach, is currently available on the dark web for public viewing and use, in the public domain, to be sold and utilized for fraudulent and criminal misuse." (*Id.* ¶ 45). Plaintiff further alleges that because Defendant failed to prevent the Data Breach,

Plaintiff and the proposed Class Members have suffered, will immediately suffer, and will continue to suffer injury-in-fact and damages, including but not limited to: (a) the loss of the opportunity to control how Private Information is used; (b) unauthorized use of stolen Private Information; (c) dramatic increase in spam telephone calls; (d) emotional distress; (e) the compromise and continuing publication of their Private Information; (f) out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud, and for necessary credit monitoring and identity theft protection; (g) lost opportunity cost and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; (h) the diminution in value of their Private Information; and (i) the continued risk to their PII and PHI, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII and PHI in its possession. (*Id.* ¶ 116)

7. Plaintiff seeks to certify a class of "[a]ll persons whose Private Information was compromised because of the October 2024 Data Breach (the "Class")." (*Id.* ¶ 178)

8. Plaintiff and the Class assert claims against Defendant for gross negligence, breach of implied contract, unjust enrichment, and invasion of privacy. (*Id.* ¶¶ 190-269)

## TIMELINESS OF REMOVAL

9. Defendant was served with the Summons and Complaint on July 27, 2026. (*See* Declaration of Phillip Williams ¶ 3), attached hereto as **Exhibit B**. As such, this removal is timely because Defendant filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 532 (6th Cir. 1999) (stating notice of removal

of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter….”); *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 348 (1999) (holding that “a named defendant’s time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, “through service or otherwise,” after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.”).

## PROPRIETY OF VENUE

10. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

## GROUNDS FOR REMOVAL

11. This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441. Removal is proper under the Class Action Fairness Act of 2005 (“CAFA”), codified in pertinent part at 28 U.S.C. § 1332(d).

12. **Basis of Original Jurisdiction**. This Court has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d). Congress enacted CAFA “to facilitate adjudication of certain class actions in federal court.” *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 287 (6th Cir. 2016) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).

13. Unlike invocations of traditional diversity jurisdiction, there is no presumption against removal where CAFA is the asserted basis. *Adams v. Adient United States LLC*, 2021 U.S. Dist. LEXIS 252083, at *28 (W.D. Tenn. Sep. 30, 2021); see *also Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89. The removing party's burden is to prove, by a preponderance of the evidence, that the jurisdictional facts it alleges are true. *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir. 1993).

14. CAFA affords federal district courts original jurisdiction over a class action if the "matter in controversy exceeds the sum or value of $5,000,000," 28 U.S.C. § 1332(d)(2), the parties are minimally diverse, *id*. § 1332(d)(2)(A), and the class contains 100 or more members, *id*. § 1332(d)(5)(B); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

15. As set forth below, under 28 U.S.C. § 1332(d) and § 1441(a), Yorozu may remove the Chancery Court action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative class includes more than 100 members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than that of the Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interests and costs.

16. **This Action Is Pled as a Class Action.** CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1).

17. Plaintiff brings a class action and seeks class certification under Tennessee pursuant to Tennessee R. Civ. P. 23.01. (Ex. A ¶ 176). Tenn. R. Civ. P. 23.01 provides that a class action may be brought by a representative party on behalf of all members of the class only if: (1) the class

is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical to the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Meighan v. U.S. Spirit Communs. Co*., 924 S.W.2d 632, n.1 (Tenn. 1996).

18. **The Putative Class Includes At Least 100 Members**. Plaintiff purports to bring a class action on behalf of "[a]ll persons whose Private Information was compromised because of the October 2024 Data Breach." (Ex. A ¶ 178). Plaintiff contends that the "exact number of Class Members is unknown to Plaintiff now, but Defendant has reported to the Indiana Attorney General's office that 20,627 individuals were affected by the Data Breach." (*Id.* ¶ 181). Thus, the number of putative class members exceeds the statutorily required minimum of 100 individuals required under CAFA.

19. **"Minimal Diversity" of Citizenship Exists**. Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant."

20. **Defendants' Citizenship**. Yorozu is an "U.S. manufacturing subsidiary of Japan-based Yorozu Corporation, an automotive parts manufacturer." (Ex. A ¶ 23) (internal footnote omitted). Yorozu maintains two plants – one in Tennessee and one in Alabama. (*See* Williams Decl. ¶ 4).

21. **Plaintiffs' Citizenship.** The Named Plaintiff is a citizen of Tennessee. (Ex. A, ¶ 16). However, the putative class Plaintiff seeks to represent are broad and expansive geographically. Although many class members are Alabama residents, Yorozu maintains offices in Alabama and Tennessee borders, and as such, a significant portion of individuals reside in those states as well as other Southern states. Indeed, Plaintiffs' proposed class encompasses "[a]ll

persons whose Private Information was compromised because of the October 2024 Data Breach." (Ex. A ¶ 178). The proposed class, therefore, is not limited by geography, and thus the Complaint seeks certification of a nationwide class. Notably, Defendant is an automotive manufacturing company that manufactures suspension modules and other automotive components. (*Id.* ¶ 23).

22. **The Amount in Controversy Exceeds the CAFA Threshold**. CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See id*. § 1332(d)(6). [I]t is generally agreed in [the Sixth C]ircuit, that the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" *Smith v. Nationwide Prop. & Cas. Ins. Co*., 505 F.3d 401, 407 (6th Cir. 2007) (internal citations omitted). The defendant can remove "the matter to federal court upon a demonstration that damages are "more likely than not" to "meet the amount in controversy requirement[.]" *Id.* (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007) (quoting *Rogers v. Wal-Mart Stores, Inc*., 230 F.3d 868, 871 (6th Cir. 2000)). In removing under CAFA, the defendant "has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement has been met." *Graiser v. Visionworks of Am., Inc*., 819 F.3d 277, 282 (6th Cir. 2016) (citing *Smith*, 505 F.3d at 404) (internal quotation marks omitted).

23. Where, as here, Plaintiff's Complaint "does not specify the amount of damages they seek to recover, the burden rests with the Defendant[] to produce other evidence establishing that the amount-in-controversy requirement has been satisfied." *Brown v. Paduch & Louisville Ry., Inc.*, 2013 U.S. Dist. LEXIS 132608, at *9 (W.D. Ky. Sep. 16, 2013); *see also Gafford v. Gen. Elec. Co*., 997 F.2d 150, 158 (6th Cir. 1993) (holding that where plaintiff's complaint seeks

recovery of an unspecified amount of damages, the burden is on defendant to prove the threshold jurisdictional amount by a preponderance of the evidence).

24. Plaintiff and the Class assert claims against Defendant for gross negligence, breach of implied contract, unjust enrichment, and invasion of privacy. (Ex. A ¶¶ 190-269). More specifically, the Complaint alleges Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach and that many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the efforts of the Data Breach relating to: (a) finding fraudulent charges; (b) canceling and reissuing credit and debit cards; (c) purchasing credit monitoring and identity theft prevention; (d) addressing their inability to withdraw funds linked to compromised accounts; (e) taking trips to banks and waiting in line to obtain funds held in limited accounts; (f) placing "freezes" and "alerts" with credit reporting agencies; (g) spending time on the phone with or at a financial institution to dispute fraudulent charges; (h) contacting financial institutions and closing or modifying financial accounts; (i) resetting automatic billing and payment instructions from compromised credit and debit cards to new ones; (j) paying late fees and declined payment fees imposed because of failed automatic payments that were tied to compromised cards that had to be cancelled; and (k) closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come. (*Id.* ¶ 172).

25. Plaintiff contends that the "retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member" and that "[t]his is a future cost for a minimum of seven years." (*Id.* ¶ 155). What is more, the Breach Notice provided by Defendant was sent to employees dating back to 1988, and Plaintiff contends that "Defendant has reported to the Indiana Attorney General's office that 20,627 individuals were affected by the Data Breach."

(*Id*. ¶ 3) (internal footnote omitted). By example, using Plaintiff's math, if 20,627 individuals obtained $200 for one year of credit monitoring, that amount would equal a staggering $4,125,400 million.

26. Plaintiff goes on to say that he, together with the Class Members, "are at a present and continuous risk of fraud and identity theft for many years into the future" because "[b]ased on the value of the information stolen, the data either has or will be sold to cybercriminals whose mission it is to perpetrate identity theft and fraud" and that "[e]ven if the data is not posted online, these data are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial fraud and identity theft of data breach victims." (*Id*. ¶¶ 153-154). This, in culmination with the fact that Plaintiff contends "[t]he retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member" which is a "future cost for a minimum of seven years" (*Id*. ¶ 155) means there could be in the many millions of dollars in controversy, even before accounting for the additional damages asserted.

27. In data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e.g., Porras v. Sprouts Farmers Mkt.,* LLC, No. EDCV 16-1005 JGB (KKX), 2016 U.S. Dist. LEXIS 96805, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.,* 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc., No.* 1:12- cv-2166, 2013

WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same).

28. Plaintiff further alleges that because Defendant failed to prevent the Data Breach, Plaintiff and the proposed Class Members have suffered, will immediately suffer, and will continue to suffer injury-in-fact and damages, including but not limited to: (a) the loss of the opportunity to control how Private Information is used; (b) unauthorized use of stolen Private Information; (c) dramatic increase in spam telephone calls; (d) emotional distress; (e) the compromise and continuing publication of their Private Information; (f) out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud, and for necessary credit monitoring and identity theft protection; (g) lost opportunity cost and lost wages associated with the time and effort expanded addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; (h) the diminution in value of their Private Information; and (i) the continued risk to their PII and PHI, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII and PHI in its possession. (Ex. A ¶ 116)

29. According to Plaintiff, "PII and PHI are valuable property rights," there is an "active and robust legitimate marketplace for Private Information," and that as of 2019, "the data brokering industry was worth roughly $200 billion." (*Id.* ¶¶ 147-148) (internal footnote omitted). Moreover, "[p]ersonal [i]nformation can be sold at a price ranging from $40 to $200," "[c]riminals can also purchase access to entire company data breaches from $900 to $4,500," and "sensitive PII can sell for as much as $363 per record on the dark web." (*Id.* ¶¶ 88, 151) (internal footnotes

omitted). As such, if Plaintiff and Class Members succeed in proving losses consistent with those claimed damages and figures, the total damages would significantly increase.

30. On top of these damages, Plaintiff and the Class also seek an award of "actual damages, compensatory damages, statutory damages, and statutory penalties" among other forms of relief. (*Id*. at p. 57).

31. Based on Plaintiff's claims, Defendant can prove that the CAFA amount in controversy has been met. *See Evans v. AMISUB (SFH), Inc*., 2017 U.S. Dist. LEXIS 227813, at *4 (W.D. Tenn. Dec. 8, 2017) (finding "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction.") (citing *Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446, 448 (7th Cir. 2005)).

32. Thus, because the case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Yorozu has properly removed the Chancery Court action to this Court.

## EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY

33. **The Local-Controversy or Home-State Exception to CAFA Jurisdiction Do Not Apply.** The local-controversy and home-state exception under CAFA do not apply. *See* 28 U.S.C. § 1332(d)(4).

34. It is well-settled that the exceptions to CAFA are just that – exceptions. It is Plaintiffs' burden to establish that one of those exception's applies, not Defendant's burden to disprove their applicability. CAFA "establishes certain exceptions to the exercise of jurisdiction under the statute, spelling out the circumstances under which the district court may or must decline to exercise jurisdiction. *See* 28 U.S.C. § 1332(d)(3)-(5). Every circuit that has considered the issue has concluded that while the removing defendant bears the burden of showing that CAFA's general

jurisdictional requirements are satisfied, the plaintiff has the burden of showing the applicability of one of the exceptions." *Bartels v. Saber Healthcare Grp.*, LLC, 880 F.3d 668, 681 (4th Cir. 2017) (citing *Evans v. Walter Indus., Inc.,* 449 F.3d 1159, 1164 (11th Cir. 2006); *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017); *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 389 (6th Cir. 2016); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 78 (1st Cir. 2009); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009); *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 676 (7th Cir. 2006); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006)).

35. The "local controversy exception" allows a district court to decline jurisdiction if: (1) more than two-thirds of the proposed class members are citizens of the state in which the action was filed; (2) at least one defendant from whom significant relief is sought and whose conduct forms a significant basis for the claim is a citizen of the state; (3) the principal injuries resulting from the conduct occurred in the state; and (4) no other similar class action was filed against any defendant within the last three years. *Owens v. Crestwyn Health Grp., LLC*, 2025 U.S. Dist. LEXIS 162693, at *3-4 (W.D. Tenn. Aug. 21, 2025) (citing 28 U.S.C. § 1332(d)(4)(A)). Notably, "[t]he local controversy exception will apply only if no other similar class action was brought against any of the defendants in the instant action during the three years preceding the filing of this case." *Davenport v. Lockwood, Andrews & Newman, Inc.*, 854 F.3d 905, 909 (6th Cir. 2017) (citing 28 U.S.C. § 1332(d)(4)(A)(ii)). It cannot be seriously disputed that another class action was brought against Yorozu, which advances very similar factual allegations and similar causes of action. (*See* Williams Decl. ¶ 5). Applying the language of the exception to the facts of the instant matter, the

local controversy exception cannot apply. The statutory language is clear and ambiguous and confirms that the federal court retains jurisdiction over this matter under CAFA.

36. Likewise, the "home state exception" allows a district court to decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Owens*, 2025 U.S. Dist. LEXIS 162693, at *4 (citing 28 U.S.C. § 1332(d)(4)(B)).

37. State citizenship equals domicile. *Id*. (citing *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990)). A class member is domiciled where they reside and intend to remain; however, there is a rebuttable presumption that each class member intends to remain where they currently reside. *Id*. (citing *Mason*, 842 F.3d at 390). The Sixth Circuit has established that "residence creates a rebuttable presumption of domicile for CAFA exception purposes." *Id*. at 7 (citing *Mason*, 842 F.3d at 390). Courts are permitted to make "reasonable assumptions" about class citizenship without requiring "exact counts." *Id*. at 9 (internal citations omitted).

38. In this case, "Defendant has reported to the Indiana Attorney General's office that 20,627 individuals were affected by the Data Breach." (Ex. A ¶ 3). Indeed, the Breach Notice of the Data Breach was sent to current and former employees *dating back to 1988 – i.e.*, a period of approximately thirty-eight (38) years. (*See* Williams Dec. ¶ 6). Approximately 19,000 of the individuals sent the Breach Notice are *former* employees of Yorozu. (*Id.* ¶ 7). As such, the reality is that (i) these former employees may not have received the Breach Notice and/or (ii) may not reside at the last known address where the Breach Notice was sent to, particularly given the fact that the Breach Notice was sent to approximately 38 years' worth of current and former employees. (*Id.* ¶ 8). For former employees who have not worked for Yorozu for ten, twenty or thirty years, many of those individuals have likely moved to different states altogether outside of Tennessee or

Alabama. Upon information and belief, a significant portion of the individuals potentially reside outside of Tennessee. (*Id*. ¶ 9). Based on the foregoing, as well as the fact that the Complaint does not plead the domiciliary of those current and former employees that were sent the Notice of the Data Breach, Plaintiff has not met the burden of showing that either of the above-referenced exceptions apply.

39. **The Interests of Justice Exception Does Not Apply**. This exception, codified under 28 U.S.C. § 1332(d)(3), provides a district court with the discretion to decline jurisdiction where (1) "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate" and (2) "the primary defendants are citizens of the State in which the action was originally filed" based on the consideration of other factors which include (a) whether the claims asserted involve matters of national or interstate interest…

40. Here, as previously noted, the individuals impacted arguably reside across the country, making this a matter of national interest rather than a localized controversy. Accordingly, the discretionary exception should not apply.

41. In sum, none of the CAFA exceptions apply and the Court should retain jurisdiction over the case.

**NOTICE**

42. As required by 28 U.S.C. § 1446(d), Yorozu is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of Court for the Thirty-First Judicial District in the Chancery Court of Warren County, Tennessee.

WHEREFORE, Yorozu removes this case in accordance with 28 U.S.C § 1441, 1446, and 1453 from the Thirty-First Judicial District in the Chancery Court of Warren County, Tennessee, to the United States District Court for the Middle District of Tennessee, Nashville Division.

Respectfully submitted this 12th day of August 2026.

*/s/ Jonathan O. Harris*

Jonathan O. Harris, Esq., TN Bar No. 21508
John R. Adams, Esq., TN Bar No. 39284
JACKSON LEWIS, P.C.
CitySpace
611Commerce Street, Suite 2803
Nashville, TN 37203
Telephone: (615) 565-1661
Facsimile: (615) 206-2244
Email: john.adams@jacksonlewis.com
jonathan.harris@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 12th day of August, 2026, a true and correct copy of the foregoing *Defendant's Notice of Removal* was served via electronic mail upon the following counsel of record:

J. Gerard Stranch, IV
Grayson Wells
Sam Douthit
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
gwells@stranchlaw.com
sdouthit@stranchlaw.com

Sean Short
Ellzey Kherkher Sanford Montgomery, LLP
4200 Montrose Blvd., Suite 200
Houston, TX 77006
service@eksm.com

*Attorneys for Plaintiff and Proposed Class*

*/s/ Jonathan O. Harris*

Jonathan O. Harris
*Attorneys for Defendant*

4907-1245-3058, v. 1